# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-4016

_____

| | | |
|---|---|---|
| Gabel Stone Company, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the Federal Mine Safety and |
| Federal Mine Safety and Health | * | Health Review Commission |
| Review Commission; | * | |
| Secretary of Labor, on behalf | * | |
| of John Noakes, | * | |
| | * | |
| Respondents. | | |

_____

Submitted:   September 13, 2002

Filed:   October 7, 2002

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges,
     and BOGUE,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

Gabel Stone Company (the company or Gabel Stone) petitions for review of
a final order of the Federal Mine Safety and Health Review Commission (the
Commission) affirming the decision of an administrative law judge (ALJ) finding that

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

the company had discriminated against John Noakes by discharging him for engaging in protected activity, in violation of 30 U.S.C. § 815(c)(1). We affirm the Commission's order.

Gabel Stone is a small mining company owned and operated by Gary Gabel. Noakes started working for the company in March 1998. In November 1998, he filed a confidential safety complaint with the Mine Safety and Health Administration (MSHA). See id. at § 813(g). On November 17 and 18, 1998, MSHA inspectors traveled to the company to investigate the complaint. When they gave Gabel a copy of the complaint with Noakes's name redacted, Gabel asked who had filed it, but told the inspectors he knew who had filed it and would fire the complainant. When Gabel saw Noakes, he handed the complaint to him, saying it might be his. During the inspection, Gable again asked the inspectors who had filed the complaint and again stated he would fire the complainant. The inspectors told him not to do so because the complainant had a right to file the complaint. In addition, they gave Gabel a book about miners' rights and told him to call Charles Sisk, an MSHA supervisor. In a telephone call to Sisk, Gabel stated he knew Noakes had filed the complaint and would fire him for filing it. Sisk warned Gabel that Noakes could file a discrimination charge if he was discharged for filing a complaint. On November 18, Gabel told the inspectors that Noakes was "going to lose his job," but "might have to wait a while, a week or two." After the investigation, the inspectors issued eight safety citations.

On November 30, Gabel told Noakes to look for another job. On December 3, Gabel told Noakes that there was no work for him, but to keep checking. Between December 3 and 9, Noakes called the company four times, but was told there was no work. When Noakes called on December 6, Gabel told him to turn in his uniform and pick up his final check the next day, which he did. Later that month, Gabel informed Sisk that Noakes had quit.

Noakes then filed a discrimination complaint with the MSHA, alleging that he had been discharged for protected activity (filing the safety complaint). At a hearing before the ALJ, Gabel testified that he had fired Noakes for poor performance and poor attitude. The ALJ found that the company's purported reasons for the discharge were pretextual and that Noakes had been fired for engaging in protected activity. After considering additional evidence on damages, the ALJ awarded Noakes back pay of $9,157.50, rejecting the company's argument that Noakes had failed to mitigate damages by enrolling as a full-time evening college student. The ALJ also assessed a civil penalty of $5,000.00. The Commission affirmed the decision.

Contrary to the company's argument on appeal, substantial evidence supports the ALJ's finding of pretext and discrimination. Indeed, abundant evidence supports the findings. In addition to Gabel's repeated statements that he would fire the complainant and his belief that the complainant was Noakes, as the ALJ noted, there was no documented evidence that Gabel had warned or counseled Noakes about poor performance or attitude or had taken disciplinary action against him; Gabel had not told Noakes the reason for the discharge; and Gabel falsely told Sisk that Noakes had quit.

Also without merit is the company's argument that the ALJ erred in failing to deny or reduce Noakes's back pay award. Although after his discharge Noakes enrolled as a full-time evening college student, he fulfilled his burden to show that he made reasonable efforts to find available suitable full-time positions. Noakes submitted evidence that he had received unemployment compensation, which required him to search for gainful employment on a consistent basis, and food stamps, which required him to register with a work search company. The evidence shows that Noakes's status as an evening college student did not interfere with his efforts to find full-time work during normal working hours. Indeed, he eventually found a full-time day job, while attending night school. We note that, despite opportunities to do so,

the company offered no evidence on mitigation. It did not request a supplemental hearing on the issue nor depose Noakes on the issue.

We have considered the company's arguments concerning discovery and evidentiary matters, and they are without merit. Because the Commission's decision is supported by substantial evidence, we affirm. See 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.